GEORGE H. WILLIAMS *v.* GENERAL CREDIT, INC.

[No. 19, January Term, 1944.]

*Decided March 23, 1944.*

The cause was argued before SLOAN, C. J., DELA-PLAINE, COLLINS, MARBURY, MELVIN, and BAILEY, JJ.

*Robert W. McCullough* for the appellant.

*John R. Reeves* and *Walter L. Green*, with whom was *William R. Lichtenberg* on the brief, for the appellee.

SLOAN, C. J., delivered the opinion of the Court.

This appeal is from an order overruling a motion to quash an attachment.

On October 23, 1941, the plaintiff, General Credit, Inc., a corporation, caused to be issued out of the Circuit Court for Montgomery County, an attachment against the defendant, George H. Williams, trading as Williams Motor Company, who was a dealer in automobiles and trucks at Kensington in Montgomery County. The attachment was on original process for fraud under Section 36, Article 9, Code of 1939, on all grounds mentioned in that section, but the only ones with which we are here concerned in this case are "that the defendant has removed or is about to remove his property * * * out of the State with intent to defraud his creditors," and he "has assigned, disposed of [and] concealed, or is about to assign, dispose of [and] conceal his property * * * with intent to defraud his creditors." A motion to quash the attachment was filed by the defendant, on whose suggestion the case was removed to Prince George's County, where it was heard by two of the judges of that circuit, who overruled the motion, from which action, the defendant appealed.

The defendant was engaged in the retail automobile business by his stock in trade from a distributor. Not having the means to pay for the cars, 90 per cent. was secured by conditional sales contracts, which were sold to General Credit, Inc. At the time of the attachment, the defendant owed $15,738.20, and the cars had all been disposed of without accounting to the plaintiff. It got anxious about its money and endeavored through its attorney to get a settlement on October 18, 1941, at defendant's place of business, but without success. Two days later, two automobiles which the attorney had seen were missing, and their disappearance was not satisfactorily explained. Five cars had been shipped to North Carolina and some sent to Philadelphia. Williams testified that they were used cars usually sent out of the State because there was no market here for used cars; and that Credit, Inc., knew of it and never complained; and that, therefore, it was done with the knowledge and acquiescence of the plaintiff; and in the ordinary course

of business. For two years or more before the attachment, the defendant sold about $250,000 worth of cars a year, financed through the plaintiff. With such a volume of business, the turn-over was sufficient for him to keep up his obligations to the plaintiff. Then business fell off; there was little supply of new cars, and the money was not forthcoming to meet his obligations as they matured, and he found himself without funds; the result was that when the business vanished, the income dwindled and he could not meet his debts to the defendant as they matured. Things that had been done in the ordinary course of business were not being done, and the plaintiff naturally worried about its account with the defendant and wanted its money. The defendant had some automobiles, mostly used, and they were the plaintiff's only hope of payment. These cars were disappearing and the plaintiff began to inquire of their destination.

There was one transaction which the trial court made the basis of its decision, and that was the sale or disposition of two new Studebaker trucks, which the defendant had in stock in October and on which plaintiff had conditional sales contracts. On October 11, 1941, he delivered them to one named Royals, since deceased, which, according to the invoice, were sold for a trade-in of $700 and cash $2,332.82. The defendant testified that Royals was to pay $2,332.82 cash, but was unable to do so, and defendant took a note for it. He said he understood Royals was engaged on some construction job in North Carolina. It developed that Royals was a laborer on some contruction job near Wahington. The address given on Williams' invoice to Royals was a vacant lot used by Williams for the storage of used cars. The trucks were located in North Carolina by Henry S. Leeds, who was a "dealer's representative" of the General Credit, at a farm of the father of a mechanic who had been employed by Williams. At the same time he located seven cars, six new and one used, in the barn, on another farm, the cars having been shipped to a dealer by Williams.

The defendant now contends that the plaintiff, and its affiant, who was its president, knew nothing about the

trucks when the attachment was issued, and, therefore, there was not sufficient evidence of fraud known to the plaintiff or its agent when the attachment was issued. There was evidence that the plaintiff knew that several cars on which it had liens had disappeared or been spirited away without any accounting to it. The test, however, is whether there actually was fraud at the issuance of the attachment. As said in *Lang v. Shanawolf,* 137 Md. 17, 19, 111 A. 117: "The question for decision is not whether the plaintiffs had good reason to believe that the defendant was defrauding his creditors, but whether such a fraud was in fact being committed. The material issue raised by the motion to quash the attachment is not determined by an inquiry as to the state and basis of the plaintiffs' belief in the truth of the charge they preferred, but by a consideration of the actual purpose and effect of the defendant's conduct." The Legislature has provided relief for any defendants against whom there may be unfounded attachments for fraud by requiring the plaintiff to give bond in the penalty of double the amount of the debt to indemnify the defendant or any other person interested, who "shall suffer because of the wrongful suing out of said attachment." Code, 1939, Art. 9, Sec. 39.

In our opinion the facts in evidence which we have related are not only sufficient to justify the plaintiff in causing the attachment to issue, but to establish the fraud as well, and the judgment appealed from should be affirmed.

*Judgment affirmed, with costs.*